IN THE MATTER OF THE COMPLAINT :
of :
ALAN FELGATE and JOHN ALLEN WALKER, : No. 3:18-cv-910 (VLB)
as Owners of a 1987 Flying Junior Sailboat, :
for Exoneration from or :
Limitation of Liability, :
*Petitioners* :
:
IN THE MATTER OF THE COMPLAINT :
of : No. 3:17-cv-1286 (VLB)
CLINTON SAILING CLUB :
as Owner of a 1987 Flying Junior Sailboat, :
for Exoneration from or : March 30, 2020
Limitation of Liability, :
*Petitioners* :
:

## ORDER AND RULING ON MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO DISMISS [Dkts. 42, 60, 46, 61]

Petitioners Clinton Sailing Club, Inc., Alan Felgate, and John Allen Walker (collectively, "Petitioners") filed this action seeking exoneration from or limitation of liability for injuries suffered by Julia Farnoli on August 17, 2016 while she was on board a Flying Junior One Design sailboat (the "Vessel"). Petitioners each claim to be an owner of the Vessel. Claimant Laura Farnoli ("Claimant" or "Ms. Farnoli") brings claims as parent and next friend of minor child Julia Farnoli. Petitioners seek an order either (1) adjudging them not liable for any claims for loss, damage, or injury arising out of the incident; or (2) limiting their liability to the value of the

Vessel as of the date of the alleged incident, in the maximum amount of $1,000.00. Claimant asks the Court to dismiss the case for lack of subject matter jurisdiction

Before the Court are the Petitioners' motions for summary judgment [Dkts. 42 (Felgate and Walker Mot. Summ. J.), 60 (Clinton Sailing Club Mot. Summ. J.)], and Claimant's Motions to Dismiss for Lack of Jurisdiction [Dkts. 46 (Claimant Mot. Dismiss as to Walker and Felgate), 61 (Claimant Mot Dismiss as to Clinton Sailing Club)]. Petitioners seek summary judgment on the grounds that there exists no evidence of negligence as a matter of law and that Claimant waived liability, so they are exonerated from all liability. Claimant seeks to dismiss Petitioner's complaint on the grounds that the Petitioners are not entitled to limitation because Felgate and Walker are not owners of the Vessel, and Clinton Sailing Club had privity or knowledge of the relevant negligence. For the reasons set forth below, the Court DENIES each motion.

### I.  Background

#### A. *Limitation of Liability Actions*

The Limitation of Liability Act, (the "Limitation Act"), 46 U.S.C. § 30501 *et seq.*, allows "a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 446 (2001). "Congress passed the Limitation Act in 1851 'to encourage ship-building and to induce capitalists to invest money in this branch of industry.'" *Id.* (citing *Norwich & N.Y. Transp. Co. v. Wright,* 13 Wall. 104, 121 (1871)).

Supplemental Admiralty and Maritime Claims Rule F ("Rule F") provides the procedure for limitation. Rule F requires that the vessel owner file a complaint seeking exoneration or limitation of liability "[n]ot later than six months after receipt of a claim in writing." After the complaint is filed, Rule F sets forth the following procedures:

> The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

*Lewis,* 531 U.S. at 448, *quoted in In re Henry Marine Serv., Inc.*, 136 F. Supp. 3d 401, 403 (E.D.N.Y. 2015). The Limitation Act does not affect the liability of a master, officer, or seaman, even if the individual is also an owner of the vessel. 46 U.S.C.A. § 30512.

### B. *Factual Background*[1]

#### 1. *The Vessel and the Parties*

The Vessel is a Flying Junior (FJ) One Design sailboat, with a fair market value of not more than $1,000. [Dkt. 47 at 21 (Ex. C: June 19, 2017 Survey of Vessel)]. Its title owner is Clinton Sailing Club. *Id.* The Vessel was equipped with

---

[1] The following facts are taken from the evidence as well as the facts in Petitioners' Local Rule 56(a)(1) Statement supported by the evidence in light of Farnoli's failure to file a Local Rule 56(a)(2) Statement. *See* D. Conn. Civ. L. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1. . . .").

boom rope cleats. [Dkt. 77-1 (Ex. G, J. Farnoli Dep. Dec. 9, 2019) at 56; *see also* [Dkt. 44-5 (Ex.E: J. Farnoli Feb. 15, 2019 Dep.) at 30:9-19].[2]

Clinton Sailing Club, Inc ("Clinton Sailing Club") is a 501(c)(3) nonprofit organization dedicated to providing sailing lessons to children ages eight to eighteen in the Clinton, Connecticut community regardless of their ability to pay. [Dkt. 42-1 (56(a)1 Statement of Facts), ¶1].

Petitioner Alan Felgate ("Felgate") was a founder of the Clinton Sailing Club. [Dkt. 42-1, ¶1]. Felgate has been a member of the board since its founding in 2016 and was its President at the time of the accident. *Ibid.* He is not involved in sailing lessons. *Ibid.* Felgate recruited a board of directors and raised funds. [Dkt. 52-3 (Ex. 3: June 14, 2019 Felgate Dep.) at 21:3-4]. Felgate met with the town of Clinton to obtain use of their beach space. [Dkt. 52-3 at 25:8-15].

John Allen Walker is also a founding board member of Clinton Sailing Club. [Dkt. 42-1, ¶3]. He was later employed by Clinton Sailing Club as a certified sailing instructor. *Ibid.* He was present on the day of the incident, and rigged the Vessel. [Dkt. 42-1, ¶20]. He examined the Vessel after the accident and found that it was in good condition: it was still properly rigged and nothing aboard was broken. *Ibid.* Walker helps organize fundraising activities including silent auctions, pub events,

---

[2] Julia Farnoli contests this, stating in an unsigned affidavit dated in 2020 that the Vessel did not have cleats for the main rope. [Dkt. 75 (Ex. 1 (Farnoli 2020 Unsigned Affidavit) at ¶ 19]. The Court finds that this affidavit does not create a genuine issue of material fact. *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.").

care washes and regattas. [Dkt. 52-4 (Ex. 4: June 13, 2019 Walker Dep.) at 33:15-24:6]. He designed Clinton Sailing Club's website and assisted with registering students. *Id.* at 51:13.

Clinton Sailing Club's board of directors chose and hired sailing instructors, who possessed U.S. Sailing Level 1 certifications. [Dkt. 52-3 at 43:3-44:10]. The board authorized the procurement of Clinton Sailing Club's FJ boats from the University of Rochester. *Id.* at 35:25.

### 2. Julia Farnoli's Previous Instruction

Julia Farnoli ("Farnoli") was a student of the Clinton Sailing Club. [Dkt. 42-1, ¶5]. In 2016, she completed one five day sailing class with the Clinton Sailing Club. [Dkt. 42-1, ¶5]. She "learned different parts of the boat, points of sail, how to tack and jib, how to rig a boat." *Ibid.* She testified that after the class, she "could sail the sailboats." [Dkt. 42-1, ¶6].

In her deposition, Farnoli explained the basics of sailing, including that the skipper is the person who steers the boat with the tiller and who holds the mainsheet (the line that trims the main sail). *Id.* at ¶ 7. Farnoli explained that skippers face the bow (front) of the boat. *Id.* at ¶ 8. She testified that, on the Vessel, the mainsheet pulls the mainsail in to make the boat go faster, or lets the mainsail out to go slower (trimming the sails). *Id.* at ¶ 9.

She testified that Clinton Sailing Club taught her the sailing maneuvers of "tacking" and "jibing," that is, maneuvering the boat by turning it through the wind. *Id.* at ¶ 10. She explained that taking and jibing involves turning the boat with the tiller. *Id.* at ¶ 10. She testified that part of tacking and jibing is ducking your head

5

because the sailboat's boom swings across the boat. *Id.* at ¶11. She also testified that the Clinton Sailing Club teaches students to make an announcement before tracking and jibing, and then to duck under the boom as it swings across the boat. *Id.* at ¶14. Clinton Sailing Club never instructed Farnoli, as a skipper, to hand the mainsheet to the crew. [Dkt. 44-5 (Ex. E: J Farnoli Feb. 15, 2019 Dep.) at 49].

### 3. Release

Before participating in her second sailing camp, Julia Farnoli and her father, Greg Farnoli, signed a release of liability provided by Clinton Sailing Club. [Dkt. 44-4 (Ex. D: August 15, 2016 Release)]. The release provided that "this Agreement shall be governed by the laws of Connecticut and that any dispute arising from this Agreement shall be adjudicated in the courts located in Middlesex County, Connecticut." *Id.* The Court takes judicial notice of the fact that no federal courts are located in Middlesex County.

### 4. August 17, 2016 Incident

On August 17, 2016, Julia Farnoli took the Vessel out with Theresa Tine ("Tine"), another student, as part of a second class, and to help teach her how to sail. [Dkt. 42-1 at ¶17]. Farnoli was the skipper. *Id.* at ¶ 17. The conditions were different from those she had experienced: it was colder and the waves were bigger. [Dkt. 44-3 at 40:15-23]. No one seemed very comfortable. *Ibid.* People were a little bit cautious and scared. *Ibid.* She was assigned to the boat by an employee of the Clinton Sailing Club. *Id.* at 41:13-23.

While in the navigable waters of the Clinton Harbor, Farnoli handed the mainsheet to Tine so that Farnoli could figure out the direction of the wind. *Id.* at ¶

18. Farnoli faced away from the boat trying to find clues for the wind. *Id.* at ¶ 18. Tine shouted her name, and, when Farnoli turned to face her, the Vessel's boom hit her. *Id.* at ¶ 18. Unconscious, she fell into the water, and sustained a broken and deformed nose, among other injuries. [Dkt. 44-5 54:20-56:16].

Neither party provides evidence that there was any problem with the Vessel the day of the Vessel. *Id.* at ¶ 19 (Farnoli statement that she was not aware of any problem with the Vessel); *Id.* at ¶20 (Walker statement that there was no problem with the Vessel the day of the accident).

## C. *Procedural History*

### 1. Clinton Sailing Club

On August 1, 2017, Clinton Sailing Club filed its complaint for exoneration from or limitation of liability pursuant to 46 U.S.C. § 30501 *et seq.* [Dkt. 1, 17-cv-1286, member case]. Clinton Sailing Club received a letter from counsel for Julia Farnoli dated February 13, 2017 advising that Farnoli had legal representation for injuries she sustained on August 17, 2016. [Dkt. 1, 17-cv-1286, at ¶ 4.] On September 11, 2017, the Court (Eginton, J.) entered an order restraining suits, approving Clinton Sailing Cub's security and directing issue of notice and the filing of claims on or before November 11, 2017. [Dkt. 6, 17-cv-1286].

As parent and next friend of Julia Farnoli Laura Farnoli, ("Ms. Farnoli") filed a claim on November 9, 2017, alleging injuries caused by the negligence of Clinton Sailing Club and by the un-seaworthiness of the Vessel, and further alleging that

Clinton Sailing Club that both were within the privity and knowledge of Clinton Sailing Club. [Dkt. 11, 17-cv-1286].

On May 29, 2019, Theresa Tine filed a claim for indemnity and contribution for all costs and liability if any, assessed against her in Connecticut state court in an action brought by Laura Farnoli as parent and next friend of Julia Farnoli. [Dkt. 28, 17-cv-1286].

On October 1, 2018, Clinton Sailing Club moved for *In re Clinton Sailing Club*, 17-cv-1286, to be consolidated with *In re Felgate*, 18-cv-910. The Court (Eginton, J.) granted the order the next day, and upon reconsideration on October 30, 2018. [Dkts. 22, 26, 17-cv-1286].

### 2. Felgate and Walker

On April 3, 2018, Felgate and Walker were served with a lawsuit by Julia Farnoli concerning the August 17, 2016 incident. [Dkt. 1, 18-cv-910]. On May 31, 2018, Alan Felgate and John Allen Walker filed their complaint for exoneration from or limitation of liability pursuant to 46 U.S.C. § 30501 *et seq.* [Dkt. 1, 18-cv-910].

Discovery was due August 1, 2019, and dispositive motions were due September 2, 2019. [Dkts. 26 (26(f) Report), 27 (Order Approving 26(f) Report)].

On October 9, 2019, the case was transferred to this Court, and on November 12, 2019, the case was consolidated with *In re Clinton Sailing Club*, 17-cv-1286.

### 3. Pending Motions

On August 29, 2019, Petitioners moved for summary judgment [Dkts. 42 (Felgate and Walker Mot. Summ. J.), 60 (Clinton Sailing Club Mot. Summ. J.)]. On September 10, 2019, Claimant moved to dismiss for lack of jurisdiction as to Walker and Felgate. [Dkt. 46 (Claimant Mot. Dismiss as to Walker and Felgate)]. On September 24, 2019, Claimant moved to dismiss for lack of jurisdiction as to Clinton Sailing Club. [Dkt. 61 (Claimant Mot Dismiss as to Clinton Sailing Club)]. Claimant moved for and received extensions of her deadline to respond to Petitioners' motion for summary judgment totaling three months, and ultimately filed her memorandum in opposition on January 10, 2020. [Dkt. 74].

## II.  Legal Standards

The Court treats both motions to dismiss as motions for summary judgment. Though the motions are styled as "motions to dismiss for lack of subject matter jurisdiction," the issues they address—ownership, knowledge, and privity—do not go to subject-matter jurisdiction, but instead to the substance of the limitation action. [3] Both parties submitted evidence outside of the pleadings. *See, e.g.*, [Dkts. 51 (Felgate and Walker Opp. to Mot. To Dismiss), 55 (Exs. Supporting Farnoli Reply)]. Further, the Court notified the parties on December 5, 2019 and again on March 25 that it would consider the motions to dismiss with the motions for summary judgment. *See* [Dkt. 69], [Dkt. 79]. Therefore, the Court finds that the parties have been given "reasonable opportunity to present all the evidence that is pertinent," and that it is appropriate to treat them as motions for summary

---

[3] Subject matter jurisdiction is addressed in sections III.A "Admiralty Jurisdiction" and III.B "Save-to-Suitors" Clause."

judgment. Fed. R. Civ. P. 12(d) (governing presenting matters outside of the pleadings); *see Cuccolo v. Lipsky, Goodkin & Co.*, 826 F. Supp. 763, 767 (S.D.N.Y. 1993) (converting motion to dismiss to motion for summary judgment where plaintiff attached affidavit to opposition and defendant attached affidavits to reply).

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). *).* An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Ibid.*

The movant may satisfy her burden by presenting affirmative evidence that negates an element of the non-movants claim or by demonstrating "an absence of evidence to support the non-moving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Where a movant presents admissible evidence tending to show there is no genuine issue of material fact for a jury to decide and she is entitled to judgment as a matter of law, a non-movant must produce admissible evidence raising a genuine issue of material fact to defeat summary judgment. Fed. R. Civ. P. 56(c). Rule 56(c) "mandates the entry of summary judgment… against a party who fails to make a showing sufficient to establish the existence of an element essential to a party's case, and on which that party will bear the burden of proof at trial." *Bedor v. Friendly's Ice Cream Corp.*, 392 F. Supp. 2d 367, 373 (D. Conn. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"In determining whether that burden [of showing the absence of any genuine issue of fact] has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But "[m]ere speculation or conjecture is insufficient; there must be evidence on which a jury could reasonably find for the nonmovant." *Anderson*, 477 U.S. at 252; *see* Fed. R. Civ. P. 56(c). "The nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists." *Bedor*, 392 F. Supp. 2d at 373 (2005) (quoting *Celotex,* 477 U.S. at 322 (1986)).

### III. Analysis

The Court's analysis proceeds in three steps: the Court first finds that it has admiralty tort jurisdiction. It then finds that factual issues remain as to whether Petitioners are owners in the sense meant by the Limitation Act. Finally, after considering the substantive issues of negligence, privity, and knowledge, the Court finds that factual issues remain in dispute and summary judgment is not warranted.

### *A. Admiralty Jurisdiction*

Federal courts are courts of limited jurisdiction. U.S. Const. art. III, § 2. If the Court determines at any time that it lacks subject matter jurisdiction the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1447(c).

The Constitution provides that "[t]he judicial Power [of federal courts] shall extend... to all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. 28 U.S.C. § 1333(1) codifies this constitutional grant of authority: "the district courts shall have original jurisdiction, exclusive of the courts of the States, of… [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are entitled." "[T]he party asserting jurisdiction bears the burden of proving that the case is properly in federal court and that party may not be relieved of its burden by any formal procedure." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).

"Although the Limitation of Liability Act provides a federal cause of action for a vessel owner seeking exoneration or limitation, it 'does not provide an independent foundation for federal admiralty jurisdiction.' " 752 F.3d at 244, *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 244 (2d Cir. 2014) (quoting *MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 143 (2d Cir. 2011) (per curiam)). In other words,

> that a vessel owner may file a petition for limitation does not mean the district court necessarily has jurisdiction to hear it. Instead, the district court will only have admiralty jurisdiction to hear a petition for limitation if it already has admiralty jurisdiction over the underlying claims that the petition seeks to limit.

*Id. ; see* 46 U.S.C. § 30511 (providing for cause of action by owner for limitation, without providing jurisdiction).

"Ordinarily," "every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction." *In re Petition of Germain*, 824 F.3d 258, 261 (2d Cir. 2016) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 543. (1995). Admiralty jurisdiction applies when the underlying incident satisfies a two-part test. First, under the location test, the court "must determine whether the tort occurred on navigable water or . . . [the] injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Second, under the connection test, the court must "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce" and "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 512 U.S. at 534 (internal quotations omitted; internal citations omitted).

Here, the location test is met because the underlying incident took place in navigable waters, in Clinton Harbor. The incident involved injuries to a sailing student on a vessel on navigable waters, a maritime emergency, thereby having a potentially disruptive impact on maritime commerce. *See In re Petition of Germain*, 824 F.3d 258, 274 (2d Cir. 2016) (finding injury to a pleasure-boat passenger who jumped from a vessel on open navigable waters met connection test because of the potentially disruptive effect of a maritime emergency response to sustain

admiralty jurisdiction). Additionally, sailboat racing has been held to bear a significant relationship to traditional maritime activity. *Evans v. Nantucket Cmty. Sailing, Inc.*, 582 F. Supp. 2d 121, 136 (D. Mass. 2008), *amended,* No. CV 05-10088-MBB, 2009 WL 10728978 (D. Mass. Feb. 5, 2009). The Court finds it has admiralty jurisdiction.

### B. Save-to-Suitors Clause

"Some tension exists between the saving to suitors clause and the Limitation Act. One statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court." *Lewis*, 531 U.S. at 448. To resolve this tension, "the Courts of Appeals have generally permitted claimants to proceed with their claims in state court where there is only a single claimant ... or where the total claims do not exceed the value of the limitation fund." The Second Circuit treats an injured party's claim and a third party's indemnity claim as separate claims for the purpose of determining whether a limitation petitioners' rights will be protected. *Id.* at 451. *Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 757 (2d Cir. 1988) ("the reasonable prospect of claims for indemnification should constitute a multiple claimant situation necessitating a *concursus*"). But,

> [t]he district courts have jurisdiction over actions arising under the Limitation Act, and they have discretion to stay or dismiss Limitation Act proceedings to allow a suitor to pursue his claims in state court. If the district court concludes that the vessel owner's right to limitation will not be adequately protected—where for example a group of claimants cannot agree on appropriate stipulations or there is uncertainty concerning the adequacy of the fund or the number of claims—the court may proceed to adjudicate the merits, deciding the issues of liability and limitation. But where ... the District Court

> satisfies itself that a vessel owner's right to seek limitation will be protected, the decision to dissolve the injunction [staying the state court proceeding] is well within the court's discretion.

*Lewis*, 531 U.S. at 454. "In sum, [the] Court's case law makes clear that state courts, with all of their remedies, may adjudicate claims ... against vessel owners so long as the vessel owner's right to seek limitation of liability is protected." *Id.* at 455; *see also* 3 *Benedict on Admiralty* § 13 (7th ed. rev. 2015); 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 15–5 (5th ed. 2011); 13 Charles A. Wright *et al.*, *Federal Practice and Procedure* § 3527 (3d ed. 2008).

Here, there are two claimants, Farnoli and Tine; Petitioners anticipatde that the claims asserted against them would be greater than the amount of their interest in the Vessel; and no stipulation was filed regarding the Limitation Act. [Compl. at ¶6]. Since the filing of the complaint, there has been no stipulation that Farnoli's claim was less than the limitation fund and no waiver of res judicata with respect to limitation of liability. Therefore, the Court finds it may proceed to adjudicate the merits, deciding the issues of ownership, liability and limitation.

## C. Ownership

In her motion to dismiss, Claimant argues that Walker and Felgate are not owners of the Vessel, and therefore are not entitled to limitation of liability. [Dkt. 46 at 9-11].[4]

"The term 'owner,' as used in limitation of liability statutes, is an 'untechnical word' which should be interpreted in a "'liberal way.'" *Dick v. United States*, 671

---

[4] Claimant acknowledges that Clinton Sailing Club did own the Vessel. [Dkt. 46 at 9].

F.2d 724, 727 (2d Cir. 1982) (quoting *Flink v. Paladini*, 279 U.S. 59, 63 (1929)). "As a general rule, one who is subjected to a ship-owner's liability because of his exercise of dominion over a vessel should be able to limit his liability to that of an owner." *Ibid.* "Some measure of dominion or control over the vessel at the time of the accident" is usually required, however. *Marine Recreational Opportunities, Inc. v. Berman*, 15 F.3d 270, 271 (2d Cir. 1994) (holding that a boat's previous owner was not entitled to limitation of liability under the act).

In *Flink*, 279 U.S. 59, the Supreme Court held that "state law-created liability of stockholders in a corporation owning a vessel was subject to of liability under the federal Limitation of Liability Act." *In re Complaint of Chesapeake Shipping, Inc.*, 778 F. Supp. 153, 157 (S.D.N.Y. 1991) (summarizing *Flink*, 279 U.S. 59). "For this purpose no rational distinction can be taken between several persons owning shares in a vessel directly and making the same division by putting the title in a corporation and distributing the corporate stock." *Flink v. Paladini*, 279 U.S. at 62. (1929). A final implication of *Flink* is that a boat may have multiple owners, and the liability of each may be limited.

Further, "the term 'owner' includes a charterer that mans, supplies, and navigates a vessel at the charterer's own expense or by the charterer's own procurement." 46 U.S.C. § 30501. To determine ownership status, courts in this Circuit look to the degree of autonomy that a non-title owner exercises over a vessel. A vessel manager is entitled to owner *pro hac vice* status when it had "virtually the responsibility of the record owner," including "manning the vessels; victualing the vessels; providing for navigation, which involved procuring and

providing deck, engine and cabin stores; maintenance and repairs for hull and machinery; providing spare parts, maintenance and repairs for communication and navigation equipment…." *In re Complaint of Chesapeake Shipping, Inc.*, 803 F. Supp. 872, 873–74 (S.D.N.Y. 1992). A non-title party claiming ownership may withstand a motion to dismiss on this issue by providing evidence that it undertook some of these responsibilities. *In re Tourtellotte*, 2010 U.S. Dist. LEXIS 130209 at *8-9 (D. N.J. 2010) (non-title-owner of recreational vessel withstood motion to dismiss where he alleged that he operated the vessel, ensured it was victualed, and communicated with its owners and the marina); *Rogers v. Lilly*, 2006 U.S. Dist. LEXIS 83905 at *17 (N.D. OH, November 17, 2006) (non-title owner withstood motion to dismiss where he alleged that he was jointly responsibility for operation, maintenance and caretaking of vessel).

The Court finds that Felgate and Walker provide sufficient facts to raise a material question as to whether they are owners for the purposes of the Limitation Act, although neither were title owners.

In the context of the Limitation Act, the key criteria for ownership is "dominion or control."" *Dick v. United States*, 671 F.2d 724, 727 (2d Cir. 1982) (quoting *Flink v. Paladini*, 279 U.S. 59, 63 (1929)); *see Marine Recreational Opportunities, Inc.*, 15 F.3d at 271. Board members generally have as much or greater control over a corporation's assets than do stockholders. Therefore, if stockholders in a corporation owning a boat are owners for the purposes of the Limitation Act, *Flink*, 279 U.S. at 59, it is a justiciable issue whether board members are also owners. A legal entity, in this case a not-for-profit, is embodied by and acts

through its members.  Its board members, most particularly its president, act on its behalf.  Here, Felgate met with the town of Clinton to obtain use of their beach space, the board chose and hired sailing instructors, and the board authorized the procurement of Clinton Sailing Club's FJ boats from the University of Rochester, all actions of *pro hac vice* owners. [Dkt. 52-3 at 25:8-15], 43:3-44:10, 35:25].  Walker, also a founding member of the board, was present and rigged the Vessel for the Petitioner on the date of the accident. [Dkt. 42-1, ¶¶3, 20].

Further, applying *Flink* to the title owner's board members is especially apt where, as in this case, the title owner is a non-profit corporation, as a purpose of the Limitation Act is to encourage investment. *Lewis*, 531 U.S. at 446. A non-profit corporation has no owners in the sense that no party receives its residual earnings. However, a non-profit corporation still has "investors," or individuals who invest their time and money into its organization and operations, and these investors are often its board members. For instance, Felgate raised funds for Clinton Sailing Club. [Dkt. 52-3 at 21:3-4]. Treating non-profit board members as owners furthers the purposes of the Limitation Act.

Respondents cite *Rao v. Hillman Barge Construction Co.,* 467 F.2d 1276, 1277 (3rd Cir. 1972), *Eskine v. United Barge Co.,* 484 F.2d 1194, 1196 (5th Cir. 1973), and *Bossard v. Port Allen Marine Serv., Inc.*, 624 F.2d 671, 672 (5th Cir. 1980) for the proposition that *pro hac vice* ownership is a very limited status and requires a high degree of control. The Court finds these cases unpersuasive as none are from the Second Circuit, and none involve the Limitation Act. *See Rao,* 467 F.2d at 1277 (suing for unseaworthiness); *Bossard,* 624 F.2d at 672 (employee suing vessel

18

owner for negligence under the Longshoremen's and Harbor Workers' Compensation Act); *Eskine*, 484 U.S. at 1196 (suing for unseaworthiness under Longshoremen's and Harbor Workers' Compensation Act).

For these reasons, the Court finds that there is a genuine issue of material fact as to whether Felgate and Walker were owners and DENIES Farnoli's motion to dismiss the Limitations Act petition as to them.

### D. Merits: Negligence & Privity or Knowledge

The Limitation Act provides:

> (a) In general.--… [T]he liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. If the vessel has more than one owner, the proportionate share of the liability of any one owner shall not exceed that owner's proportionate interest in the vessel and pending freight.

> (b) Claims subject to limitation.--Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner.

46 U.S.C. § 30505. "Instead of being vicariously liable for the full extent of any injuries caused by the negligence of the captain or crew employed to operate the ship, the owner's liability is limited to the value of the ship unless the owner himself had "privity or knowledge" of the negligent acts." *In re City of New York*, 522 F.3d 279, 283 (2d Cir. 2008).

Limitation proceedings require a two-step analysis: "First, the court must determine what acts of negligence caused the accident. Second, the court must

determine whether the ship owner had knowledge or privity of those same acts of negligence." *Otal*, 673 F.3d at 115 (alterations and internal quotation marks omitted) (quoting *In re Moran Towing Corp. ("Moran I")*, 166 F.Supp.2d 773, 775 (E.D.N.Y. 2001)). . The claimant "bears the initial burden of proving negligence," after which the burden shifts to the ship owner to "prove lack of knowledge or privity." *Id.* (quoting *Moran I*, 166 F.Supp.2d at 775).

*1. Threshold Procedural Issues*

      i.    *Requirement of Answer*

Claimant first argues that, since Petitioners did not respond to their answer and claim, Petitioners have admitted negligence. [Dkt. 74 at 14-15] (citing Fed. R. Civ. P. 8(b)(6)).

Per Federal Rule 8(b)(6),

> An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

This is an admiralty matter governed by Supplemental Rule F. Supplemental Rule F(2) requires that, not later than six months after receiving a claim, the petitioner file a limitation of liability complaint in which "the right to limit liability is asserted and all facts necessary to enable the court to determine the amount to which the owner's liability shall be limited. F. The complaint may demand exoneration from as well as limitation of liability." Fed. R. Civ. P. Supp. R. F. Supplemental Rule F(5) requires claimants to file and serve a claim and answer to the complaint. *Ibid.* But, as Petitioners point out, Supplemental Rule F does not

require petitioners to file an answer. Therefore, per Rule 8(b)(6), Claimants' allegations are considered "denied or avoided."

### ii.    *Affirmative Defense*

Claimant next argues that, since Petitioners did not file affirmative defenses of either waiver of liability or for comparative negligence, the affirmative defenses are forfeited. [Dkt. 74 at 16]

Ordinarily, an affirmative defense is forfeited "if not raised in a defendant's answer or in an amendment thereto." *Wood v. Milyard*, 566 U.S. 463, 470 & n. 4 (2012); *see* Fed. Rules Civ. P. 8(c), 12(b), and 15(a). An affirmative defense is defined as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary 430 (7th ed.1999)).

Where a claim does not require a responsive pleading, "an opposing party may assert at trial *any defense* to that claim." Fed. R. Civ. P. 12 (b) (emphasis added); *see* Fed. R. Civ. P. 8(c)(1) ("*in responding to a pleading,* a party must affirmatively state any avoidance or affirmative defense" (emphasis added)). Again, as Petitioners point out, Supplemental Rule F does not require petitioners file an answer to the claims and answers. Therefore, Petitioners did not forfeit their affirmative defenses.

### 2. Negligence

"In admiralty and maritime cases, "'determination of negligence involves first the formulation and then the application of a standard of conduct to evidentiary facts found to be established." *In re Nagler*, 246 F. Supp. 3d 648, 657 (E.D.N.Y. 2017) (citing *Mamiye Bros. v. Barber S. S. Lines, Inc.*, 360 F.2d 774, 776 (2d Cir. 1966)). Common law negligence principles apply to a maritime negligence claim. *In re Treanor*, 144 F.Supp.3d 381, 388 (E.D.N.Y. 2015) (citing *Cornfield v. Cornfield*, 156 Fed. App'x. 343, 344 (2d Cir. 2005) (Summary Order)). "Thus, a claimant must establish a legal duty, a breach of that duty, causation, and damages." *In re Nagler*, 246 F. Supp. 3d at 357 (citing *Treanor*, 144 F.Supp.3d at 389)).

Vessel owners owe the duty to exercise reasonable care under the circumstances to those lawfully aboard the vessel. *Kermarec v. Compaigne Generale Transatlantique*, 358 U.S. 625 (1959); *see also Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 64-65 (2d Cir. 1988). "Under well-established principles of Second Circuit maritime negligence law, an owner breaches his or her legal duty of reasonable care by failing to take simple precautions to prevent foreseeable and serious injury." *In re Treanor*, 144 F. Supp. 3d 381, 389 (E.D.N.Y. 2015) (citing *United States v. Carroll Towing Co.,* 159 F.2d 169, 173 (2d Cir.1947) (Hand, J.) ("Learned Hand Rule")).

Petitioners make two arguments for summary judgment: first, that Claimant has provided no evidence to support her claim that they breached their duty to her, or that their action or inaction caused her injury; and second, that Julia Farnoli and her parent signed a waiver of liability, which if valid under federal admiralty law.

*i. Lack of evidence*

In response to the first point, Claimant argues that (1) Petitioners failed to teach the students how to handle the main sail rope ("mainsheet") between themselves; (2) Petitioners failed to warn Farnoli of the impending wind and foul weather; (3) the Vessel was in a dangerous condition in that the boom could swing without being attended by the skipper or operator of the boat; (4) Petitioners treated Farnoli and Tine as guinea pigs; (5) Petitioners failed to warn Farnoli that there were no cleats to tie the mainsail boom ropes down on the boat. [Dkt. 74 at 8, 20-21].

The Court finds that Claimant has provided sufficient evidence of the first two claims to create a genuine dispute of a material fact as to whether Petitioners provided sufficient safety instructions. Clinton Sailing Club never instructed Farnoli, as a skipper, to hand the mainsheet to the crew, [Dkt. 44-5 at 49], and therefore also never instructed the students how to handle the mainsheet between themselves. Farnoli consistently testifies that the weather was worse than she was used to, namely, that the waves were bigger and it was windier and yet she was allowed to skipper the Vessel with only a less experienced student on board. [Dkt. 44-5 at 40:15-23]. Therefore, this element cannot provide a basis for summary judgment as to the Petitioners.

As to causation, there is a clear dispute of fact. Walker states that only the skipper steering the boat with the tiller, could tack or jibe, and therefore swing the boom across the Vessel so failing to instruct the students as to handling the mainsheet could not have caused the accident. [Dkt. 43 (Walker Affidavit) at ¶ 12].

Farnoli states that she did not turn the tiller before the accident, but the wind caused to Tine lose control of the mainsheet and the boom to swing across the Vessel and hit Farnoli. [Dkt. 44-5 at 52:20-22]. Thus, this element also cannot provide a basis for summary judgment as to the Petitioners. The Court denies summary judgment on the basis of lack of evidence.

    ii. *Waiver*

    Petitioners also argue that Farnoli and her father signed an agreement prior to the accident releasing them from liability, and that the release is valid and enforceable. Claimant responds that the waiver states that all disputes arising from the waiver shall be heard in the Courts of Middlesex County, Connecticut, and so any dispute regarding the wavier should be removed to state court. The Court agrees with Claimant that any waiver clause is to be adjudicated in state courts.

    "A forum selection clause is… mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007)(citations omitted) (holding that contract language stating proceedings "are to be brought in England" is a mandatory forum selection clause). When determining the scope of the forum selection clause, "to 'arise out of' means 'to originate from a specified source,' and generally indicates a causal connection." *Id.* at 389 (2d Cir. 2007) (quoting Webster's Third New International Dictionary 117 (1981)). A claim that arises under a federal law for jurisdictional purposes may also arise out of an agreement "for purposes of interpreting a forum selection clause." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 387-392 (2d Cir. 2007). "If the forum clause was communicated to the

resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Id.* at 383, *quoted in Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). A party can overcome this presumption only by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 383–84 (quoting *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15 (1972)), *quoted by Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014).

Here, the release was written by the Clinton Sailing Club and signed by Farnoli and her parent. . [Dkt. 44-4 (Ex. D: August 15, 2016 Release)]. It states that "any dispute arising from this Agreement shall be adjudicated in the courts located in Middlesex County, Connecticut." *Id.* The Court takes judicial notice of the fact that no federal district court is located in Middlesex County, Connecticut. The Court finds that the phrase "shall be adjudicated in the courts located in Middlesex County, Connecticut," is obligatory venue language sufficient to establish mandatory forum selection. The Court further finds that the issues in contention in this section of the motion for summary judgment—what law governs the release; whether Julia Farnoli can void the release; whether the release is against public policy—all originate from the release agreement. Finally, no party has argued that enforcement would be unreasonable or unjust. Therefore, the Court dismisses this defense for improper venue. *See* 28 U.S.C. § 1406 ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss…); *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 393 (2d Cir. 2007)

(dismissing some claims for improper venue while retaining other claims). Petitioners may bring this argument in the case brought in the proper venue. Since this Court cannot adjudicate Petitioner's waiver argument, the Court denies summary judgment on this ground as well.

### 3. Privity and Knowledge

In her motion to dismiss against Clinton Sailing Club, Claimant argues that Clinton Sailing Club had privity and knowledge of the incident, and therefore is not entitled to limitation of liability. [Dkt. 61-1 (Mem. Supp. Mot. to Dismiss as to Clinton Sailing Club) at 7-9].

Limitation proceedings require a two-step analysis: "First, the court must determine what acts of negligence caused the accident. Second, the court must determine whether the ship owner had knowledge or privity of those same acts of negligence." *Otal*, 673 F.3d at 115 (alterations and internal quotation marks omitted) (quoting *In re Moran Towing Corp. ("Moran I"),* 166 F.Supp.2d 773, 775 (E.D.N.Y. 2001)). The claimant "bears the initial burden of proving negligence," after which the burden shifts to the ship owner to "prove lack of knowledge or privity." *Id.* (quoting *Moran I*, 166 F.Supp.2d at 775).

As the Court has just determined that there remains a dispute of fact as to whether Clinton Sailing Club committed acts of negligence, there must also remain a dispute of material fact as to whether Clinton Sailing Club had knowledge or privity of those acts. The Court therefore DENIES Claimant's motion to dismiss as to Clinton Sailing Club.

### IV. Conclusion

The Court denies Claimant's motions to dismiss, and also denies Petitioners' motions for summary judgment. This case will proceed to a *concursus* proceeding in July 2020 in which the Court will determine the issues of ownership, liability, and limitation. *See In re Nagler*, 246 F. Supp. 3d at 656. The parties' joint trial memorandum is due May 15, 2020.

Should the parties wish to engage in settlement discussions with a Magistrate Judge, they must jointly request a referral within 10 days of the date of this decision. Within 7 days of the referral the parties must consult with the assigned magistrate judge and schedule the settlement conference. No extensions will be granted to engage in settlement discussions or to fulfill the terms of a settlement.

It is so ordered.

_____ */s/* _____

**Honorable Vanessa L. Bryant**

**District of Connecticut**

Dated at Hartford, Connecticut: March 30, 2020